UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DALE GARCIA CORTEZ,<br><br>                        Plaintiff,<br><br>  v.<br><br>MARTIN O'MALLEY,[1]<br>Commissioner of Social Security*,*<br><br>                        Defendant. | Case No. 3:23-cv-00391-CLB<br><br>**ORDER GRANTING MOTION TO REMAND**<br><br>[ECF No. 15] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Dale Garcia Cortez's ("Cortez") application for supplemental security income pursuant to Title XVI of the Social Security Act. Currently pending before the Court is Cortez's motion for reversal and remand. (ECF No. 15.) The Commissioner filed a response, (ECF No. 17), and Cortez replied. (ECF No. 20.) Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 12), the Court concludes that the Commissioner's finding that Cortez could perform other work that exists in significant numbers in the national economy was not supported by substantial evidence. Therefore, the Court grants Cortez's motion for remand, (ECF No. 15).

**I.      STANDARDS OF REVIEW**

     **A.      Judicial Standard of Review**

This court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of

---

[1]      Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not

speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.     Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.   CASE BACKGROUND

### A.   Procedural History

Cortez applied for supplemental security income ("SSI") on June 5, 2019, with an alleged disability onset date of August 1, 2018. (AR 25, 87.) The onset date was later amended to September 24, 2018. (AR 53.) Cortez's application was denied initially on September 30, 2019, and upon reconsideration on October 27, 2020. (AR 107-40.) Cortez subsequently requested an administrative hearing and on April 14, 2022, Cortez and her attorney appeared at a telephonic hearing before an ALJ. (AR 47-68.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.*) The ALJ issued a written decision on May 4, 2022, finding that Cortez was not disabled because she could perform other

work that exists in significant numbers in the national economy. (AR 25-39.) Cortez appealed, and the Appeals Council denied review. (AR 10-16.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Cortez filed a complaint for judicial review on August 10, 2023. (*See* ECF No. 1.)

B.     **ALJ's Decision**

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 25-39.) Ultimately, the ALJ disagreed that Cortez has been disabled from September 24, 2018, the alleged onset date, through the date of his decision. (AR 38.) The ALJ held that, based on Cortez's RFC, age, education, and work experience, Cortez could perform other work that exists in significant numbers in the national economy. (AR 37-38.)

In making this determination, the ALJ started at step one. Here, the ALJ found Cortez had not engaged in substantial gainful activity since the alleged onset date of September 24, 2018. (AR 28.) At step two, the ALJ found Cortez had the following severe impairments: sciatica; migraine with aura; right shoulder tear and AC joint arthritis; degenerative disc disease ("DDD") of the lumbar spine with stenosis, spondylosis, and radiculopathy; obesity; chronic pain syndrome; bilateral carpal tunnel syndrome; and peripheral neuropathy. (AR 28-30.) At step three, the ALJ found Cortez did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (AR 30.)

Next, the ALJ determined Cortez has the RFC to perform light work as defined by 20 C.F.R. §§ 416.967(b) except:

> she must be allowed to stand up to 5 minutes after every 30 minutes of sitting, and to sit down up to 5 minutes after every 30 minutes of standing, while remaining on task. She can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities. She can occasionally push or pull or operate foot controls with both lower extremities. She can occasionally kneel, crouch, stoop, balance, and crawl, as defined

> in the SCO, and can occasionally climb stairs and ramps. She can never climb ladders, ropes and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts. She can tolerate occasional exposure to vibration. In addition, she is able to understand, carry-out, and remember simple instructions, and make simple work-related decisions. She will be off task 10% of the workday.

(AR 30-31.)

The ALJ found Cortez's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Cortez's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 31-33.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Cortez's credibility. (AR 31-37.) The ALJ then determined that Cortez is not capable of performing past relevant work, as a forklift operator and a warehouse worker, as actually or generally performed. (AR 37.)

Relying on the testimony of the VE, the ALJ determined that Cortez's age, education, work experience, and RFC would allow him to perform other occupations existing in significant numbers in the national economy, such as: parking attendant, office helper, or order caller. (AR 38.) Accordingly, the ALJ held that Cortez had not been under a disability since the alleged onset date of September 24, 2018, through the date of the decision, and denied Cortez's claim. (AR 38-39.)

**III.    ISSUE**

Cortez seeks judicial review of the Commissioner's final decision denying SSI under Title XVI of the Social Security Act. (ECF No. 15.) Cortez raises two issues for this Court's review:

> (1)    Whether the ALJ's determination of the credibility of Cortez's subjective symptoms is supported by substantial evidence; and
>
> (2)    Whether the ALJ's assessment of Cortez's RFC is supported by substantial evidence.

(*Id.* at 10-23.)

///

///

## IV. DISCUSSION

### A. The ALJ's Subjective Symptom Analysis

First, Cortez argues the ALJ's subjective symptom analysis is not supported by substantial evidence. Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. Substantial evidence means more than a mere scintilla, but less than a preponderance. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). impairment(s). *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). The ALJ must take "the claimant's subjective experiences of pain" into account when determining the RFC. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see also Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018) (as amended); *Diedrich*, 874 F.3d at 641; *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (as amended); *Garrison*, 759 F.3d at 1014; *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted); *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Garrison*, 759 F.3d at 1014).

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citation omitted); *see also*

*Leon*, 880 F.3d at 1046. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted); *see also Smith*, 14 F.4th at 1113 ("In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." (internal citations omitted)).

In weighing a claimant's credibility, the ALJ may consider their reputation for truthfulness; inconsistencies either in their testimony or between their testimony and their conduct; their daily activities; work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *See Smolen v. Chater*, 80 F.3d 1273, 12884 (9th Cir. 1996) (citations omitted). The ALJ may also consider inadequately explained failure to seek treatment of to follow a prescribed course of treatment. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

Specifically, Cortez argues the ALJ's subjective symptom analysis is not supported by substantial evidence because it rests on two flawed rationales: (1) using MRIs to evaluate Cortez's migraines; and (2) finding that Cortez was conservatively treating her DDD of the lumbar spine and sciatica. (ECF No. 15 at 11-16.) The Court will evaluate each rationale in turn.

### 1.     Using MRIs to Evaluate Migraines

Cortez argues the ALJ's reason for discounting her testimony regarding her subjective symptoms of her migraines was because her MRIs were normal. (ECF No. 123-15.) Cortez argues the ALJ fails to explain why an abnormal MRI is required for a migraine disorder. (*Id.* at 14.) The Commissioner argues that regardless of the MRI results, Cortez's migraines were improving with medication which the ALJ rationally took into consideration when weighing Cortez's self-reports. (ECF No. 17 at 4.) In reply, Cortez argues the ALJ did not include discussion of any migraine treatment in his decision but rather focused only

on the objective testing results. (ECF No. 20 at 4-6.) Cortez argues that the Commissioner's argument relating to treatment therefore constitutes an impermissible *post hoc* rationale. (*Id.*)

In this case, the ALJ concludes Plaintiff's headache symptoms are inconsistent with objective medical evidence with the brief explanation that "[s]he is diagnosed with migraines and is treated with medication. Her brain MRI and EEGs were within normal limits." (AR 33.) Social Security Ruling 19-4p, Evaluating Cases Involving Primary Headache Disorders, provides guidance on how to evaluate primary headache disorders, including migraines. SSR 19-4p.[2] According to SSR 19-4p, physicians may conduct imaging scans such as MRI to "rule out other possible causes of headaches - such as a tumor - meaning that *an unremarkable MRI is consistent with a primary headache disorder diagnosis.*" *Id.* at *4 (emphasis added). Therefore, the presence of normal MRI is entirely consistent with the diagnosis of a migraine and using lack of MRI findings as objective evidence to discredit Plaintiff's symptom complaints was an error by the ALJ.

Next, the Court turns to the Commissioner's argument that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." (ECF No. 17 at 4 (citing *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).) However, this rationale is not present within the ALJ's decision itself. (*See* AR 25-39.) In evaluating a motion to remand, the Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir.2003)). Merely mentioning that Cortez's migraines are treated with medication is not the same as finding that the medication is successfully relieving her symptoms.

---

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

Therefore, the Court may not affirm the ALJ's determination that Cortez's subjective symptom testimony as to her migraines was inconsistent based on evidence of successful medical treatment. *Orn*, 495 F.3d at 630. As there are no remaining reasons given by the ALJ in his decision for determining Cortez's subjective symptom testimony as to her migraines was inconsistent, the ALJ's decision is not supported by substantial evidence as to this issue.

### 2. Conservative Treatment

Next, Cortez argues the ALJ impermissibly discounted her subjective symptom testimony relating to her DDD of the lumbar spine and sciatica solely because she had received conservative treatment. (ECF No. 15 at 15-16.) Cortez argues her treatment was not conservative because she was prescribed strong medications and underwent injections in her spine. (*Id.* at 15.) The Commissioner argues that the use of ongoing pain medication, including opioid therapy, can constitute conservative treatment. (ECF No. 17 at 3-4.) In reply, Cortez argues the Commissioner does not explain why Cortez's injection therapy was conservative, why the "conservative treatment" was relevant, or whether there was any improvement. (ECF No. 20 at 3-4.) Cortez further argues that even if the treatment was conservative, neither the ALJ nor the Commissioner explained alternative treatment she could have sought but chose not to pursue. (*Id.* at 3.)

Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). However, "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 Fed.Appx. 662, 664 (9th Cir. 2010).

Here, the ALJ found that Cortez's statements regarding the intensity, persistence, and limiting effects of her DDD of the lumbar spine and sciatica were inconsistent because she received only conservative treatment of physical therapy, medication, and injections. (AR 33.) Many courts do not consider the use of narcotics and injections for pain management conservative in nature. *Lapeirre-Gutt*, 382 Fed.Appx. at 664 (treatment

consisting of narcotics, occipital nerve blocks, and trigger point injections not conservative); *Childers v. Berryhill*, 2019 WL 1474030 at *9 (D. Nev. Mar. 12, 2019) (rejecting an ALJ's characterization of treatment as conservative where it included narcotics and steroid lumbar injections); *Oldham v. Astrue*, No. CV 09-1431-JEM, 2010 U.S. Dist. LEXIS 72353, 2010 WL 2850770, at *9 (C.D. Cal. July 19, 2010) (finding "several instances of lumbar epidural steroid injections, ... the length of the record over time, the intensity of certain procedures, and the evidence of numerous medications that Plaintiff took to alleviate pain render any argument Plaintiff's treatment was 'conservative' unconvincing"); *Soltero de Rodriguez v. Colvin*, 2015 U.S. Dist. LEXIS 125158, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015) (claimant's pain management plan consisting of narcotics and narcotic-like medications in addition to epidural steroid injections was not conservative). *But see Torres v. Colvin*, No 2:13-cv-0082-GMN-PAL, 2014 U.S. Dist. LEXIS 141792, 2014 WL 4977321, at *17 (D. Nev. Oct. 6, 2014) (rejecting argument that alleged receipt of steroid injection, alone, overcame ALJ's characterization of treatment as conservative).

The medical evidence shows that Cortez was prescribed gabapentin and hydrocodone for her DDD of the lumbar spine and sciatica. (AR 481-82, 665, 765.) Cortez also received injections in her lumbar spine for chronic pain. (AR 637, 737-38, 742-43, 755-56.) The record shows that Cortez continued to consistently report chronic pain after receiving injections and physical therapy. (AR 662-65, 703, 706, 727-29, 737-38, 742-43, 755-56, 765.) Here, the combination of treatments and Cortez's continued reports of pain despite the treatments do not support the ALJ's conclusion that Cortez's treatment was conservative. Therefore, the ALJ erred in discounting Cortez's subjective pain testimony as to her DDD of the lumbar spine and sciatica.

### B. The ALJ's RFC assessment is Supported by Substantial Evidence.

Next, Cortez argues that the ALJ's RFC assessment is not supported by substantial evidence as to both her mental and physical limitations. (ECF No. 15 at 16-22.) A claimant's RFC assessment is a determination of what the claimant can still do despite

their physical, mental, and other limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also Laborin*, 867 F.3d at 1153 (explaining that the RFC is the most a claimant can still do despite their limitations). In determining a claimant's RFC, the ALJ must consider all the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. The ALJ must take "the claimant's subjective experiences of pain" into account when determining the RFC. *Garrison*, 759 F.3d at 1011. As the ALJ did not properly assess Cortez's subjective symptom testimony, any RFC determination based on the improper assessment is likewise flawed. Therefore, the Court declines to substantively analyze any alleged issues with the ALJ's RFC assessment. Rather, for the reasons discussed below, the Court remands this case to the ALJ for a finding of disability and calculation and award of benefits.

**V.    REMAND**

Usually, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981)). However, courts are empowered to affirm, modify, or reverse a decision by the Commissioner "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Courts have generally exercised this power when it is clear from the record that a claimant is entitled to benefits. *Garrison*, 759 F.3d at 1019.

The Ninth Circuit has established "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citing *Ryan,* 528 F.3d at 1202; *Lingenfelter,* 504 F.3d at 1041; *Orn,* 495 F.3d at

640; *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir.2004); *Smolen,* 80 F.3d at 1292).

First, the Court must consider whether the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison*, 759 F.3d at 1019. This step is met for the reasons set forth above as to both Cortez's migraines and DDD of the lumbar spine and sciatica.

At the second step, the Court considers whether there are "outstanding issues that must be resolved before a disability determination can be made" and whether further administrative proceedings would be helpful. *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 101 (9th Cir. 2014). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1104-1105. "Where ... an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105.

The Court's review of the record as to Cortez's migraines reflects that the treating providers' records, her testimony, and the consultative examining providers' reports are consistent in showing that Cortez has a history of severe migraines for which she has received treatment. In August of 2018, a month before the alleged onset date of September 24, 2018, medical reports show Cortez had migraines two to three times a week with aura dizziness, photophobia, phonophobia, nausea, vomiting, and dizziness. (AR 558.) Cortez was prescribed medications for her migraines and related symptoms as directed by her physician. (*Id.*) In December of 2018 and February of 2019, Cortez reported her migraines had decreased in frequency and intensity but still reported that they occurred four times a month. (AR 552, 555.) Again, Cortez was prescribed medication for her migraines. (*Id.*) In June of 2021, medical reports show Cortez's migraines had been getting worse; she had recently been to the ER for her migraines and occur "about once a week and will sometimes go for 2 days. Imitrex doesn't always help now." (AR 861). Cortez testified that she experiences migraines at least four times a month, sometimes

having up to eight a month. (AR 59.) These migraines last anywhere from six to eight hours up to a day or two. (*Id.*) Cortez testified that "basically four days out of a month, [she is] in bed with a migraine headache." (*Id.*)

The Ninth Circuit has established that a remand for the purpose of allowing the ALJ to have "a mulligan" to revisit the testimony that was improperly rejected does not qualify as a remand for a 'useful purpose' under the credit-as-true analysis. *Garrison*, 759 F.3d at 1021-22 (citations omitted). In *Garrison*, the Commissioner argued that further proceedings were required because the ALJ did not make an RFC determination based on the opinions that were improperly rejected. *Id.* at 1021, n. 28. The Ninth Circuit rejected this argument, explaining that "ALJs rarely base their RFC determinations on opinions or testimony that they have rejected (and it will always be such opinions or testimony that are at issue in credit-as-true cases)." *Id.* The Ninth Circuit further stated: "Instead, we have considered whether the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true." *Id.* (citing *Lingenfelter*, 504 F.3d at 1041; *Varney v. Secretary of Health and Human Services,* 859 F.2d 1396, 1401 (9th Cir. 1988))*.* In *Garrison*, the court found that the ALJ and the claimant's counsel posed questions to the VE matching the claimant's testimony and the opinions of the medical providers whose opinions were improperly rejected, and in response stated that such a person would be unable to work. *Id.* Here, as in *Garrison*, the ALJ asked the VE a hypothetical question which matched Cortez's testimony that was improperly rejected, and the VE responded that such a person would be unable to work. (AR 66 (hypothetical question including restriction that individual would be absent from work two or more days per month.) Therefore, there are no "outstanding issues that must be resolved before a disability determination can be made" and further administrative proceedings would not be useful. *Treichler*, 775 F.3d at 1101.

Finally, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Here, if Cortez's improperly discredited subjective symptom

testimony is credited as true, the record establishes that Cortez would be absent from work two or more days per month due to her migraines. Cortez's testimony and medical reports demonstrate that she has migraines at least four to eight times a month which last anywhere from six to eight hours up to two days. (AR 59, 552, 555, 558, 861.) Cortez testified that "when I get [migraines] I can't do anything except sleep." (AR 55.) In finding that someone is not disabled, the person must have the ability to perform the assessed level of work *on a regular and continuing basis. See e.g.* 20 C.F.R. § 404.1545(c) (SSA "ass[es] the nature and extent of [the claimant's] mental limitations and restrictions and then determine[s] [the claimant's] [RFC] for work activity *on a regular and continuing basis.*" (emphasis added)); SSR 96-8P, 1996 WL 374184 ("RFC is an assessment of an individual's ability to do *sustained* work-related physical and mental activities in a work setting *on a regular and continuing basis.* A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.... "In assessing RFC, the adjudicator must discuss the individual's ability to perform *sustained* work activities in an ordinary work setting *on a regular and continuing basis . . .* " (emphasis added)). Even if Cortez's migraines were hypothetically timed perfectly for one month to avoid working hours, meaning she would not be absent from work more than two days that month, the frequency and duration of her migraines do not support a conclusion that Cortez can perform sustained work activities on a regular and continuing basis.

Therefore, if Cortez's improperly discredited subjective symptom testimony is credited as true, the ALJ would be required to find Cortez disabled on remand due to her migraines.[3] Accordingly, the matter is remanded for the ALJ to find Cortez disabled and calculate award benefits.

///

///

---

[3] As Cortez's migraines alone are sufficient to require the ALJ to find her disabled, the Court need not address whether the credit-as-true analysis would support the same finding as to her DDD of the lumbar spine and sciatica.

### VI. CONCLUSION

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was not supported by substantial evidence.

Accordingly, **IT IS THEREFORE ORDERED** that Cortez's motion to remand (ECF No. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter be remanded to the agency for a finding of disability and calculation and award of benefits consistent with this order.

The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

**DATED**:  March 7, 2024.

_____
**UNITED STATES MAGISTRATE JUDGE**